**OSMOND KEAN, INC., Plaintiff**
and
**FIRST PENNSYLVANIA BANK, N.A., Intervenor**

v.

**VISTA GROSVENOR, Defendant**

Civil No. 34/1985

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 20, 1986

JOSEPH BRUCE WM. ARELLANO, ESQ., St. Thomas, V.I., *for plaintiff*

JOHN W. STRYKER, ESQ. (BIRCH, DEJONGH & FARRELLY), St. Thomas, V.I., *for intervenor*

IVER A. STRIDIRON, ESQ., St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

Plaintiff Osmond Kean has moved for reconsideration of the court's order that granted First Pennsylvania Bank's motion to intervene. The motion requires the court to determine whether payment of a forged check by a bank constitutes an interest relating to the property or transaction that is the subject of this action.[1] After reviewing the thoughtful and persuasive supplemental memoranda of both sides, the court is of the opinion that leave to intervene was properly granted. As a result, the plaintiff's motion for reconsideration, as well as its motion for execution of $9,786.48 of the monies subject to a writ of attachment at the Chase Manhattan Bank, will be denied.

---

[1] Rule 24(a), Fed. R. Civ. P., in pertinent part provides:

Upon timely application anyone shall be permitted to intervene in an action . . . (a) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

## I.

The plaintiff sued the defendant, Vista Grosvenor, plaintiff's former bookkeeper, alleging that she fraudulently caused a check to be drawn on the plaintiff's account and then made it payable to herself and deposited it in her personal checking account at the Chase Manhattan Bank. Simultaneous with the filing of its complaint, which seeks recovery of the allegedly defrauded funds, the plaintiff obtained a prejudgment attachment of all of the defendant's bank accounts, including her account at Chase. Shortly thereafter, First Penn moved for and was granted leave to intervene pursuant to Fed. R. Civ. P. 24(a). First Penn contends that it paid a forged check that had been deposited into the defendant's personal bank account at Chase, and that as a result it obtained a constructive trust in the funds at Chase. First Penn maintains that when the plaintiff attached the defendant's bank accounts at Chase the plaintiff had, in essence, attached plaintiff's property; and, therefore, it has a direct interest in the plaintiff's action against the defendant.

## II.

The plaintiff, however, contends that First Penn is not entitled to benefit from the plaintiff's identification and attachment of the defendant's assets. Relying on this court's opinion in Virgin Properties, Inc. v. Greaux, Civ. No. 175/1981 (Terr. Ct. St. T. & St. J., Oct. 22, 1981), plaintiff contends that a general judgment creditor of a defendant does not have a sufficient interest to intervene as a party in a lawsuit previously initiated by another creditor who already has obtained prejudgment attachment of the defendant's assets. Virgin Properties, however, applied 5 V.I.C. § 257 (1967) and its mandate that "from the date of attachment until it is discharged or the writ executed, the plaintiff as against third persons shall be deemed a purchaser in good faith." As a result, in Virgin Properties, the court determined that Island Block, as a general judgment creditor of the defendant, did not have a sufficient interest in the subject matter of the proceedings to intervene. As the court made clear in Virgin Properties, the general creditor's interest there centered on the effect of the plaintiff's lawsuit and attachment on Island Block's ability to collect on a judgment it already had obtained against defendant, and not on any interest it had in the subject matter of the Virgin Properties lawsuit itself. Clearly, the claim of Island Block as general

judgment creditor with no specific interest in the previously attached property is distinguishable from First Penn's claim of an *ownership* interest in the property that was attached in this case.[2]

Because we are considering money, as opposed to a specific piece of property, the plaintiff also argues that no portion of the defendant's attached funds are identifiable as First Penn's "property." The plaintiff further argues that the funds used to pay a forged check initially are those of the party whose signature was forged. Consequently, should the payor bank, here First Penn, subsequently be obliged to reimburse the payor the fraudulently obtained funds, the plaintiff maintains that that still would not support a constructive trust in favor of First Penn vis-a-vis the fraudulently obtained funds. Finally, the plaintiff argues that a constructive trust cannot arise on money deposited in the commercial banking system, and that where there is an adequate remedy at law a suit in equity for restitution of money cannot be maintained. Although the plaintiff cites an impressive number of cases and authorities in support of its positions, the court is of the opinion that plaintiff's citations either do not advance its proposition or are factually distinguishable.

## A.

When First Penn paid the allegedly forged check, it did not properly charge the named drawer's account because the drawer did not sign the check or authorize another to sign for him. 11A

---

[2] There is little doubt that Rule 24, when it speaks of "an interest relating to the property or transaction which is the subject of the action," generally is speaking in terms of the underlying action and not of any interest one may have in property that is attached. Commonwealth Edison Co. v. Allis Chalmers U.S. Ltd. Co., 315 F.2d 564, 566 (7th Cir. 1963), cert. denied, 375 U.S. 834. However, where, as here, the focal point of attention is the property that has been attached, then the court must look to the interest of the parties and the proposed intervener in the attached property. See Dennis v. Kolm, 131 Cal. 91, 63 Pac. 141, 142 (1900) (intervener claimed to own money, which was attached as the property of one of the alleged co-partners of the defendant firm. The intervener denied the property belonged to the defendant firm or the alleged co-partner and asserted that the money was hers as the proceeds of a note and mortgage that had been assigned to her. The court held that under California law intervention properly was granted. If the intervener "has an interest in the matter in litigation or in the success of either of the parties," he has a right to intervene), and Potlatch Lumber Co. v. Runkel, 101 Pac. 396 (Ida. 1909) (the owner or claimant of property attached in an action for debt has such an interest against both parties to the main action as to entitle him to intervene for the purpose of asserting his right and title to the attached property). Cf. In re Oceana International, Inc., 49 F.R.D. (D.N.Y. 1970).

V.I.C. § 3—401(1), § 3—404(1), § 4—401 (1965). This rule is based on the premise that a bank is charged with the knowledge of the signatures of its customers. It gives rise to a related rule that a "bank pays a forged check at its own risk and it will considered paid out of its own funds, so it has no right to charge such check to the depositor's account on which it purports to be drawn." Sabatino v. Curtiss National Bank of Miami Springs, 446 F.2d 1046, 1056 (5th Cir. 1971). As a result, when First Penn paid the defendant on a forged check, it paid her out of its own funds.

## B.

■ "Where the owner of property transfers it, being induced by fraud . . . of the transferee, the transferee holds the property upon a constructive trust for the transferor." Restatement of Restitution, § 166 (1937).[3] Comment b to section 166 states, "If the remedies at law are adequate . . . a suit in equity cannot be maintained for specific restitution of the . . . money," but qualifies that limiting language by adding that where the wrongdoer is insolvent there is no adequate remedy at law. First Penn states, and it is not contradicted, that the plaintiff already has attached all of the defendant's known assets. It would appear, therefore, that the defendant's apparent insolvency makes First Penn's theory of a constructive trust applicable to this case.[4] Defendant's alleged insolvency also satisfies that part of Rule 24(a) that requires First Penn to demonstrate that it is "so situated that disposition of

---

[3] In the absence of local law to the contrary, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, are the rules of decision of the courts of the Virgin Islands. 1 V.I.C. § 4 (1967).

[4] Plaintiff correctly argues that First Penn has not supported its contentions of insolvency of the defendant by affidavits or other evidence in the record. The court, however, believes it may properly infer that, in fact, the plaintiff already has attached all of the defendant's known assets. First, a $48,589.05 summary judgment has been granted to the plaintiff against the defendant, and since that judgment plaintiff has not been able to satisfy its March 17, 1986, writ of execution, except for those funds that were obtained by the prejudgment attachment in excess of the disputed funds. To the contrary, the crux of the dispute between the plaintiff and First Penn is who should get $9,786.48 of the attached monies now in the possession of the clerk of this court. Second, counsel for the defendant moved and was granted leave to withdraw because of the failure of the defendant to pay counsel for representation in this case as well as two criminal cases that arose out of the conduct giving rise to this suit and First Penn's motion to intervene. In addition, this is not a motion for summary judgment or in any way to be construed as a final determination of the rights of the parties to the $9,789.04. Finally, there is no requirement that a motion

the action may as a practical matter impede or impair [its] ability to protect that interest."

■■ The plaintiff responds that any "constructive trust" that First Penn may have had in the funds in defendant's bank account was lost when the plaintiff attached them and had them paid over to the Territorial Court pending the resolution of this suit. The interest of the beneficiary or owner of the property held in constructive trust, though, "will be protected if the rights of bona fide purchasers do not intervene. The creditors of the constructive trustee are not bona fide purchasers." Restatement of Restitution, § 160, Comment f. Moreover, "[w]here a person holds property subject to a constructive trust, his creditors are not purchasers for value and are subject to the constructive trust . . . . So also, a creditor who attaches the property . . . is not a bona fide purchaser, although he had no notice of the constructive trust." As the money in question does not appear to have passed to a bona fide purchaser, there appears to be no transaction that would defeat First Penn's constructive trust. Restatement of Restitution, § 173, comment j. See also, Restatement (Second) of Trusts, § 308, comments a and c (1959).

## C.

■■ Plaintiff's final arguments are that a constructive trust cannot be imposed on money, and that even if First Penn had a constructive trust, it was lost either when the defendant comingled the proceeds from the forged check with the other funds in her bank account or when the plaintiff caused all of the defendant's accounts to be attached. In essence, plaintiff contends that First Penn's funds are not identifiable with sufficient certainty for the imposition of a trust. However, it has been recognized that a constructive trust may be applicable to money, and may be defeated only where it has passed to a creditor who accepted in good faith. Benjamin v. Walda State Bank, 158 P. 65 (Kan. 1916). Additionally,

---

to intervene. In addition, this is not a motion for summary judgment or in any way to be construed as a final determination of the rights of the parties to the $9,789.04. Finally, there is no requirement that a motion to intervene be supported in a manner similar to a motion for summary judgment. "The proposed pleading must state a good claim for relief or a good defense but the general rules on testing a pleading are applicable here. The pleading is construed liberally in favor of the pleader and the court will accept as true the well-pleaded allegations in the pleading." 7A C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1919 at 569-70 (1972).

"[t]he person whose money is wrongfully mingled with money of the wrongdoer does not thereby lose his interest in the money, although the identity of his money can no longer be shown, but he acquires an interest in the mingled funds." Restatement of Restitution, § 209, comment a (1937). The transparency of plaintiff's argument concerning the identifiability of the disputed funds is made evident by the plaintiff's own detailed tracing of the origin, course, and present location of these funds.[5]

## III.

■ The purpose of Fed. R. Civ. P. 24 is to enable a person not named as a party to a lawsuit, but who has a direct, substantial and legally protectable interest in the subject matter of the proceedings, to intervene and thus protect himself from an action that might be detrimental to him. 7A C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1908 (1972). See note 2, supra. This is not a case, as plaintiff would have the court believe, where a creditor with an unliquidated claim or a general judgment creditor is seeking to leap frog onto another creditor's suit against a common debtor and take advantage of an oppportunity at easy execution of judgment. Cf. Virgin Properties Inc. v. Greaux, supra. Nor is it a case that undermines the commercial banking system and the general rule that funds deposited in a bank form a part of the general deposit of the bank. Once the funds at Chase were identified by the plaintiff as those of the defendant— the basis for the attachment here—they ceased being a part of the general deposit. Cf. Northern Trust Co. v. Chase Manhattan Bank, 582 F. Supp. 1380 (D.N.Y. 1984), aff'd, 748 F.2d 803 (2d Cir. 1984).

■ First Penn's motion to intervene was granted because it claimed a specific interest in property already attached by the plaintiff, and it should be given an opportunity to establish such an interest. The court, therefore, is satisfied that the intervener's interest in the subject matter of this action is direct and protectable, and not remote and speculative. The plaintiff's motion for reconsideration, therefore, will be denied.

---

[5] Because First Penn has moved to intervene, the focus of attention has been on its interest in the attached property. The court also notes, though, that on the record now before it, First Penn appears to have a much more "identifiable" interest in the attached funds than does the plaintiff.

## ORDER

The court having entered its Memorandum Opinion this date, it is

ORDERED that the defendant's motion for reconsideration is Denied, and it is further

ORDERED that the first and second full paragraphs of page 3 of the court's order of March 17, 1986, are vacated, and it is further

ORDERED that execution of this court's judgment of March 17, 1986, with respect to $9,786.48 of the total monies attached by the plaintiff from Chase Manhattan Bank is stayed pending disposition of the complete claim of the plaintiff and the petitioner First Pennsylvania Bank, and it is further

ORDERED that the parties show within 20 days of this order who has a priority to the $9,786.48 under attachment and/or state whether an evidentiary hearing is necessary for such a determination and, if so, what facts are in dispute that require such a hearing.